RECEIVED
JUN 0 6 2008
Clerk, U.S. District and
Bankruptcy Courts

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Jeremy Kahn, *pro se*     )
                          )
    *Plaintiff,*          )
                          )
v.                        ) CASE: 1:07-cv-02323 (HHK)
                          )
Federal Motor Carrier Safety Administration  )
                          )
    *Defendant*           )

**Plaintiff's Opposition
To Defendant's Motion For Summary Judgment**

The vintage television show *The Twilight Zone* often relied on the basic plot of a single event as seen differently by those living in two distinct, parallel, but slightly out-of-synch worlds. Reading each party's Summary Judgment Motion and pleadings is like viewing an old *Twilight Zone* show, as the parties each proceed along their own path, perhaps unaware – or at least unmindful – of the existence of the other.

Look how the parties describe the same event so differently.

On October 2, 2007, FMCSA issued a formal Order in *P.A.M. Transport* as a part of its administration of its self-insurance program. On May 15, 2008, seven months later, (and even then only following a formal FOIA request and this litigation), FMCSA releases a redacted form of that Order. From that, we learn among other things that seven months earlier FMCSA (1) had deviated from its standard practice in self-insurance cases,

1

imposing an adjusted tangible net worth requirement "set at a level that is greater than the . . . average for carriers currently in the self-insurance program" because of concerns, in part, about the industry concentration of P.A.M.'s customers, (2) had expressed concerns about P.A.M.'s valuation method of claims for purposes of the self-insurance program, and (3) had excluded intercompany accounts from certain required key calculations, all of which are issues of significance for other carriers already in the FMCSA program and those considering making application to become self-insured.

FMCSA looks at this occurrence and crows it is entitled to some sort of a "Special Commendation for Good Government Award" for releasing the Order in any form after seven months. Plaintiff looks at the same occurrence and questions how a federal agency, bound by the Administrative Procedures Act not to act arbitrarily and capriciously, can administer a program based on agency precedent, but at the same time refuse promptly to release to the public the formal orders it issues in its administration of that program. The agency's position is even less understandable since it relies on earlier orders when deciding new cases, says to the public its orders are available upon request, and has been making almost identical orders available upon request for at least 20 years!

Plaintiff does not agree with FMCSA's assertion that by it having issued a redacted Order in seven months under these circumstances, FMCSA "has fully met its obligation under the statute" and is therefore entitled to praise. (FMCSA Mem., p.1)

The essence of this action is the claim that when a federal agency administers a statutory program by issuing formal orders, those orders should be made available to the

public without need for an FOIA request, without having to wait seven months to receive only a redacted copy, and certainly without the need to burden the parties and the Court with all the costs of formal litigation as a prerequisite to simply obtaining the orders.

In Plaintiff's parallel world, FMCSA's position is not only "wrong" from an FOIA standpoint, but it is preposterous from a public policy point of view. FMCSA's registration of motor carriers under 49 U.S.C. §13902(a)(1) is contingent on only two things – an applicant's safety fitness and compliance with the mandatory liability insurance requirements of 49 U.S.C. §13906, both of which are designed to assure reasonable protection for those who share the highways with commercial carriers. Under 49 U.S.C. §13906(d), a motor carrier can self-insure rather than maintain commercial insurance so long as FMCSA makes the required finding in each order approving self-insurance that "The Applicants' self-insurance of its BI&PD liability, subject to conditions, will afford the security for the protection of the public contemplated by 49 USC §13906." [1]

Assume, based on actual experience, that a self-insured carrier experiences financial problems, leading to a termination of self-insurance status. [2] Shouldn't the public be entitled to know FMCSA has found a carrier's self-insurance does <u>not</u> provide the security contemplated by §13906? This is a real-world issue with real-world

---

[1] *See*, for example, *Bennett* decision, Exhibit C to Statement of Jeremy Kahn Supporting Summary Judgment, p.10.

[2] *See,* for example, *Transport Corporation of America* decision, Exhibit G to Statement of Jeremy Kahn, *supra*, where the carrier's self-insurance authority is apparently to be revoked.

consequences. Cases such as *Kline v. Gulf Insurance Co.*, 466 F.3d 450 (6th Cir. 2006) and *Wells v. Gulf Insurance Co.*, 484 F.3d 313 (5th Cir. 2007) dealt with resolving competing interests when an FMCSA self-insured motor carrier went bankrupt and did not pay its self-insured claims. To resolve competing claims – most important being the injured members of the public who were stranded without the statutory liability insurance protection which FMCSA was responsible to oversee – the parties certainly needed timely access to self-insurance orders to see what FMCSA had authorized the carrier to do and how the defunct carrier had not complied. In response to such compelling needs for orders, FMCSA's rationale expressed here seems to be, "Let the public eat cake!"

In opposing FMCSA's Motion for Summary Judgment, Plaintiff for the most part relies on its own Summary Judgment Motion and supporting papers in which he argued at great length and with reliance on appropriate precedent. However, Plaintiff also responds to certain issues in FMCSA's Summary Judgment filing which merit response, including concerns about FMCSA's ongoing lack of candor in its representations to this Court.

In his world, Plaintiff has crafted a comprehensive record for this Court which shows the nature of self-insurance orders over at least the past 20 years, how they have always been made available to the public, and provides multiple examples of orders both prior and subsequent to the October, 2007 FMCSA policy decision to no longer release them. By reference to the particulars of actual orders, Plaintiff argues there is no difference between old and new orders to justify FMCSA's assertion that it is shocked!

shocked! to learn they include historic financial and claims information and therefore cannot be released.

In its world, FMCSA, which has access to every order ever issued, submits only one as an example (that being the four page *Contract Freighters* order submitted with the Bitner Affidavit to "support" its claim that all such orders were no more than one or two pages). The contrast between Plaintiff's reference to actual orders and FMCSA's reliance on vague platitudes could not be more dramatic. Instead of pointing out actual terms of actual orders, FMCSA instead relies on vague, parsed statements to suggest that it may have released a few such orders in the past, but since current orders are so different from the old orders, a change in its practice is understandable. [3]

To support its Summary Judgment request, FMCSA paints a picture of dramatic change; it asserts that earlier orders were "no more than a page or two," and that more recent orders "began to include more detailed information about self-insurance applicants and program participants." (FMCSA Memorandum., p.4, repeated at p.6). In response, Plaintiff repeats the statement from its Reply to FMCSA's earlier Opposition (Dckt. 18, p.3): "This could be a compelling argument if the premises were true – but they are false!" In the following pages of that earlier Opposition, Plaintiff debunked those FMCSA representations, with explicit reference to the precise terms of self-insurance

---

[3] Even though FMCSA asserts it had no obligation to tell anyone of its change in policy, it did represent to the Court in March that it would soon provide a *Federal Register* notice to advise the public of its changed policy, (Bitner Affidavit, ¶11). It is now June, and the public is still awaiting that notice.

orders actually issued by FMCSA! While it is troublesome that FMCSA repeats this discredited argument, it is more troublesome that FMCSA makes this very same representation to the Court after being confronted with documentary evidence that its argument is patently false. The Court and Plaintiff are owed a higher degree of candor.

In Plaintiff's world, FMCSA's Summary Judgment Motion fails to address the following issues addressed by Plaintiff's own pending Summary Judgment Motion.

(1) <u>FMCSA *Register* publication</u>. Throughout, Plaintiff has asserted that the FMCSA *Register* publication of notice of each of the three FMCSA Orders included a statement from FMCSA that each was immediately available upon request, and so FMCSA had an obligation to live up to its word and make them available upon request. FMCSA has <u>nowhere</u> acknowledged this point or explained why the public should not be entitled to rely on FMCSA's published statement that such decisions are available upon request. FMCSA's silence on this point speaks volumes.[4]

(2) <u>FMCSA has always released such orders in the past</u>. Plaintiff's unchallenged assertion is that FMCSA (and predecessor agencies) have readily released self-insurance orders for at least 20 years. (Statement of Jeremy Kahn, *supra*, ¶6, ¶¶14-15) FMCSA argues at pages 15-16 of its Memorandum that an agency's "erroneous release" of some

---

[4] Obviously, FMCSA is aware of this issue. **Appendix A** is a copy of a recent FMCSA *Register* publication showing a self-insurance decision. There is no longer reference to the availability of such decisions by calling a contractor as was true earlier. FMCSA's assertion "The Agency continues to publish notices of all self-insurance decisions, *as it had previously*, in the FMCSA Register" (FMCSA Memorandum, p. 6, emphasis added) doesn't take into account that it has ceased noting their availability, which is an important part of this lawsuit.

confidential information in the past does not preclude it from changing its policy. Such an argument is inapposite to the facts in this case and an unbroken history of releasing such orders for 20 years. FMCSA, though given every opportunity to do so, has not shown by reference to any order any difference between that information which has been released for at least 20 years and any information appearing in any current FMCSA order.

(3) <u>There has been no change in order length or complexity</u>. FMCSA argues it changed its policy because today's orders are far lengthier and far more detailed than past orders. Plaintiff's earlier Opposition (Dckt. 18), pages 4-7, demonstrates with reference to the actual orders issued and their explicit content that such assertions are patently false and inaccurate. As said elsewhere, FMCS had every opportunity to point to any provision in any order, past or present, to support its assertion, but it has not done so.

(4) <u>Affected carriers make reasonable claim for confidentiality</u>. FMCSA bases its abrupt change in policy on longstanding FOIA regulations and a new policy of asking affected carriers if they don't want orders released to the public.[5] First, Plaintiff's statement that carriers understand going into the process that some financial and claims information will be published in an order available to the public (Statement of Jeremy Kahn, *supra*, at ¶17) has not been questioned by FMCSA, so it must be accepted as true. Second, FMCSA ignores the financial reporting requirements for very current information made available to the public included in its own regulations at 49 CFR 369

---

[5] Plaintiff's earlier Opposition (Dckt. 18), at pages 10-11 explains how, even if FMCSA's rationale were valid, the time line of events makes no sense whatsoever.

for which waivers are not granted on confidentiality grounds. Most of all, FMCSA stretches the limits of the truth in its response to this issue. *See,* particularly the Opposition (Dckt. 18) at pages 9-11, especially the statement at page 9, "FMCSA has not presented to the Court <u>any</u> request of <u>any</u> nature by <u>any</u> carrier seeking confidentiality in connection with submission of information which will result in an FMCSA order such as those sought in this action."

(5) <u>FMCSA relies on precedent, so its orders must be released</u>. FMCSA is an administrative agency, and it administers its self-insurance program through its formal orders. Access to such orders is necessary to understand how the agency is working. Even the just released *P.A.M.* order compares the conditions imposed on that carrier to conditions imposed on other self-insured carriers. As argued earlier, such comparisons are typical in FMCSA orders.

Most importantly, fundamental administrative process requires publication of agency orders so one can tell if the agency is or is not acting arbitrarily. **Appendix B** is a letter from FMCSA to plaintiff, arising from FMCSA's out-of-the-blue imposition several years ago of a so-called "no-transfer" rule [*See, Bennett* decision, Jeremy Kahn Statement, Ex. C. p.13, condition #11 for an example] as a condition of self-insurance, even for already authorized carriers. Upon discovering such an abrupt change in policy which was hidden in a run-of-the-mill self-insurance order, Plaintiff, as an active practitioner before the agency, wrote FMCSA expressing concerns with the adoption of such a new rule without any notice and apparently with little appreciation for its

consequences. Appendix B is the agency's reply, acknowledging Plaintiff's concerns and suggesting it would modify its policy and allow for a "good cause" waiver of such a condition in the future. It promised to advise the public of this change not by any public statement, but "in future self-insurance decisions" (p.1), and noted that by publishing such a policy in future orders, it would "put the public and the motor carrier community on notice" of changed policy. There's an awfully large conceptual problem with an agency saying it will use orders to put the general public on notice if it won't make those orders public!

(6) <u>Need for prospective relief.</u> Plaintiff renews its argument that the Court should grant prospective relief. FMCSA issues self-insurance orders on an ongoing basis. In addition to the three orders identified in the Amended Complaint, FMCSA has issued additional self-insurance orders, at least those involving LS Transport, Inc., served January 23, 2008, Averitt Express, Inc., served April 15, 2008; and Swift Transportation Company, Inc., served May 29, 2008, all of which Plaintiff has requested under FOIA, on which FMCSA has taken no action. (These are in addition to two orders affecting entities represented by Plaintiff, in which FMCSA provided copies.) If the Court agrees Plaintiff's universe is the real one, then any relief is illusory if Plaintiff is required to commence litigation each time such an order is issued.

(7) <u>FMCSA's reliance on contract appeals cases is misplaced.</u> Contract appeals cases, which are adversarial in nature and conducted under the strict rules of the


contracting agency, are clearly inapposite as precedent. FMCSA has offered no pertinent examples to support its position.

Plaintiff's pending Summary Judgment Motion explains why Plaintiff asserts he should prevail. FMCSA's belated Summary Judgment Motion only repeats, with variations, its "Let them eat cake" approach to its obligation to allow the public access to its administrative orders. Plaintiff's world is the one of legal reality; the Court should adopt Plaintiff's view, grant his Summary Judgment Motion and deny that of FMCSA.

WHEREFORE, Plaintiff respectfully prays that this Court will deny Defendant's Motion for Summary Judgment, grant Plaintiff's Motion for Summary Judgment, and issue such other and further relief as it may deem just and proper in the premises.

Respectfully submitted,

_____
Jeremy Kahn, *pro se*
Business Address For Mail:
1730 Rhode Island Ave., N.W., No. 810
Washington, D.C. 20036
Day Telephone 202.887.0037

### Certificate of Service

I, Jeremy Kahn, certify that I have served a copy of the foregoing Opposition upon counsel for Defendant, Federal Motor Carrier Safety Administration, by mailing a copy to Beverly M. Russell, Esq., Assistant U.S. Attorney, U.S. Attorney's Office for the District of Columbia, Civil Division, 555 Fourth Street, N.W., E-4915. Washington, DC 20530, by first class mail, postage prepaid.

Dated at Washington, DC this 6th day of June, 2008.

_____
Jeremy Kahn

SIONS AND NOTICES RELEASED May 21, 2

| | | | |
|---|---|---|---|
| MC-634553-P | CURTIS ROBERT MORTON - BLENHEIM, SC | 05/21/2008 | REVOCATION |
| MC-634813-B | AMERICAN EAGLE TRANSPORT LLC - MONTREAL, QC | 05/21/2008 | DISCONTINUANCE |
| MC-634916-C | A PLUS VAN LINES INC. - DANIA, FL | 05/21/2008 | NOTICE |
| MC-635008-P | CHRIS WILSON - HOUSTON, TX | 05/21/2008 | NOTICE |
| MC-635029-C | ALL FOUR WHEELS RECOVERY AND TRANSPORT IN - MIAMI, FL | 05/21/2008 | REVOCATION |
| MC-635044-P | SHERYL HAWES - DELOIT, IA | 05/21/2008 | REVOCATION |
| MC-635140-C | HELL SPAWN TRANSPORT CORP - LOXAHATCHEE, FL | 05/21/2008 | DISCONTINUANCE |
| MC-635285-C | JESUS PEREZ - MISSION, TX | 05/21/2008 | REINSTATEMENT |
| MC-635397-P | CHARLIE GUSTUS - SEALY, TX | 05/21/2008 | NOTICE |
| MC-635552-P | BRENT NELSON - MENAGHA, MN | 05/21/2008 | DISCONTINUANCE |
| MC-635552-C | BRENT NELSON - MENAGHA, MN | 05/21/2008 | DISCONTINUANCE |
| MC-635798-C | A&R AUTO TRANSPORT INC - JACKSONVILLE, FL | 05/21/2008 | NOTICE |
| MC-635806-C | ABDIAS CHRISTIAN FAITH FELLOWSHIP CHURCH - BELLEVILLE, IL | 05/21/2008 | NOTICE |
| MC-635932-C | MARILYN OREGGIO - ATLANTA, GA | 05/21/2008 | NOTICE |
| MC-636518-B | GCD TRANSPORTATIONS LLC - DALLAS, TX | 05/21/2008 | REVOCATION |
| MC-636575-P | STANDAFER SERVICES LLC - BURLINGTON, NC | 05/21/2008 | NOTICE |
| MC-636692-C | KENNETH Z. CAPERS - HOPE MILLS, NC | 05/21/2008 | NOTICE |
| MC-637319-C | ALEX COVARRUBIAS - TOLLESON, AZ | 05/21/2008 | NOTICE |
| MC-637373-C | STEVEN BAILEY - CHARLOTTE, NC | 05/21/2008 | REVOCATION |
| MC-637487-C | STEPHEN R CONLEY SR - ECKERTY, IN | 05/21/2008 | REVOCATION |
| MC-637497-C | PACIFIC CASCADE TRUCKING, LLC - AUBURN, WA | 05/21/2008 | REINSTATEMENT |
| MC-637515-P | CATLEDGE EXPRESS, LLC. - GRENADA, MS | 05/21/2008 | NOTICE |
| MC-637644-C | ROSCOE FAMILY TRANSPORTATION - OSWEGO, L | 05/21/2008 | REVOCATION |
| MC-637700-P | RICHARD J HENRY INC - KITNERSVILLE, PA | 05/21/2008 | NOTICE |
| MC-637798-P | KIT TRANSPORT INC - SILVER SPRING, MD | 05/21/2008 | DISCONTINUANCE |
| MC-638655-C | SCOTT ROBIDOUX - WESTMINSTER, CO | 05/21/2008 | REVOCATION |
| MC-639077-P | WILLIAM CARL SARTIN JR - CLAYTON, DE | 05/21/2008 | NOTICE |
| MC-639767-C | UNITED TRUCKING GROUP INCOPORATED - HANOVER PARK, IL | 05/21/2008 | REVOCATION |
| MC-639890-C | DISPATCH NOW TRANSPORTATION LLC - TEMECULA, CA | 05/21/2008 | NOTICE |
| MC-639915-C | TYPHOON TRUCKING LLC - VILLA RICA, GA | 05/21/2008 | NOTICE |
| MC-639989-C | SMALL WLD MOVING, LLC - DALLAS, TX | 05/21/2008 | DISCONTINUANCE |
| MC-640206-C | RAMIZ TUCAKOVIC - ANTELOPE, CA | 05/21/2008 | DISCONTINUANCE |
| MC-640715-P | LAKHBIR SINGH - LIVE OAK, CA | 05/21/2008 | NOTICE |
| MC-640735-B | CHARLES ANDERSON - CHARLOTTE, NC | 05/21/2008 | REVOCATION |
| MC-641460-P | PARKER TRANSPORT INC - MIAMI, FL | 05/21/2008 | NOTICE |
| MC-641578-P | VALERIY A KARCHA - INMAN, SC | 05/21/2008 | NOTICE |
| MC-641785-P | GROUPE LUSSIER INC - ST-LIN LAURENTIDES, QC | 05/21/2008 | REVOCATION |
| MC-643094-C | WILLARD T. JAMES JR. - MANHATTAN, IL | 05/21/2008 | DISCONTINUANCE |
| MC-643376-P | DELTA TRANS INC - GLENDALE, CA | 05/21/2008 | NOTICE |
| MC-644595-C | FAITH ANN DELOSSANTOS - HOUSTON, TX | 05/21/2008 | NOTICE |
| MC-644644-P | RST ROMERO'S SOUTHERN TRANSPORT LLC - LOS ANGLES, CA | 05/21/2008 | DISCONTINUANCE |
| MC-645443-C | JOSEPH KANONI TRANSPORT INC - CAMBRIDGE, ON | 05/21/2008 | NOTICE |

## MISCELLANEOUS

| NUMBER | TITLE | DECIDED | SERVED | DECISION TYPE |
|---|---|---|---|---|
| MC-164740 | ACE TRANSPORTATION LLC - BROUSSARD, LA | 05/21/2008 | 05/21/2008 | SELF-INSURED |
| MC-194705 | DYNASTY TRANSPORTATION LLC - BROUSSARD, LA | 05/21/2008 | 05/21/2008 | SELF-INSURED |



**U.S. Department
of Transportation**

**Federal Motor Carrier
Safety Administration**

400 - Seventh St., SW
Washington, DC 20590

Refer to: MC-ECC

Mr. Jeremy Kahn
1730 Rhode Island Avenue, N.W.
Suite 810
Washington, D.C. 20036

Re: Comments on "No Change of Ownership" Condition

Dear Mr. Kahn:

Thank you for your letter of August 4 discussing the new "change of ownership" condition imposed in the July 27, 2006, *Greyhound* self-insurance decision. The Federal Motor Carrier Safety Administration (FMCSA) has indicated its intention to impose the same condition in all future grants of self-insurance authority and in all modifications of existing authorities. The Agency appreciates your continuing interest in the self-insurance program and the protection of the public which the program is designed to ensure.

You suggest that FMCSA and self-insured motor carriers would be better served by a case-by-case examination of changes of ownership affecting self-insured carriers than by the automatic loss of self-insurance authority mandated by the new condition. We agree with your observation that certain transactions undertaken for tax or estate-planning purposes could trigger the "change of ownership" condition even though the transactions had no material adverse impact on the motor carrier's financial and operational status. You suggest that a condition requiring advance notification to FMCSA of any planned change in ownership would allow advance consideration of the impact of the change on the carrier. However, we do not believe it is necessary to modify the current condition to allow such advance consideration.

The Agency has determined that it will entertain requests for waiver of the condition in those limited circumstances where a change in ownership has no material impact on the carrier. Any waiver request must be submitted sufficiently in advance of the change of ownership to provide sufficient time for full consideration of the transaction(s). The request must also be accompanied by all documentation, financial and otherwise, necessary to permit a reasoned determination of the effect on the carrier. The Agency plans to inform the public of the availability of the waiver option in future self-insurance decisions.

# Appendix B

2

The FMCSA believes the waiver option will avoid the unintended results from application of the "change of ownership" condition which you have noted. Retention of the condition, however, will put the public and the motor carrier community on notice that changes in ownership must be reported to the Agency and will in most cases result in loss of the carrier's self-insurance authority.

Thank you again for providing us with your comments on this matter.

Sincerely yours,

Charles A. Horan III
Director for Enforcement
and Compliance

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Jeremy Kahn, *pro se*  )
  )
    *Plaintiff,*  )
  )
v.  ) CASE: 1:07-cv-02323 (HHK)
  )
Federal Motor Carrier Safety Administration  )
  )
    *Defendant*  )

**Order on Defendant's Motion For Summary Judgment**

THIS MATTER having come before the Court on Defendant's Motion For Summary Judgment, including its supporting Memorandum and the Opposition thereto by Plaintiff.

Plaintiff has submitted a proper request under the Freedom of Information Act, 5 U.S.C. §552 for three specified Orders issued by defendant Federal Motor Carrier Safety Administration in the administration of its motor carrier self-insurance program as authorized by 49 U.S.C. §13906(d). Defendant has now provided Plaintiff with a copy of one order and redacted copies of two orders, but Plaintiff nonetheless maintains the full orders should have been issued immediately upon request and that prospective relief is appropriate.

It appears that the three requested FMCSA documents are "orders" as defined by 5

1

U.S.C. §551(6), and therefore must be made available to plaintiff under 5 U.S.C. §552(a)(2)(A). FMCSA has offered no acceptable justification for failing to provide these orders immediately or for redacting portions of the orders before releasing them to Plaintiff.

IT IS HEREBY ORDERED, that Defendant's Motion is DENIED.

Entered this ___ day of June, 2008.

_____
United States District Judge

Serve:

Beverly M. Russell, Esq.
Assistant U.S. Attorney
U.S. Attorney's Office for the District of Columbia
Civil Division
555 Fourth Street, N.W., E-4915.
Washington, DC  20530

Jeremy Kahn
1730 Rhode Island Ave., N.W., Suite 810
Washington, D.C.  20036