UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JEREMY KAHN,<br><br>                Plaintiff,<br><br>       v.<br><br>FEDERAL MOTOR CARRIER<br>SAFETY ADMINISTRATION,<br><br>                Defendant. | Civil Action 07-02323 (HHK) |

MEMORANDUM OPINION

Jeremy Kahn, an attorney proceeding *pro se*, brings this action against the Federal Motor Carrier Safety Administration ("FMCSA") under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), seeking to obtain three FMCSA decisions that Kahn contends the FMCSA wrongfully withheld from him in violation of FOIA; namely: *P.A.M. Transport, Inc.*, FMCSA Docket MC-150496 (Oct. 2, 2007) ("*P.A.M.*"); *Celadon Trucking Services, Inc.*, FMCSA Docket MC-185116 (Dec. 28, 2007) ("*Celadon*"); and *Con-Way Truckload, Inc.*, FMCSA Docket MC-119399 (Jan. 14, 2008) ("*Con-Way*").[1]  Before the Court are Kahn's motion for summary judgment [#11] and FMCSA's cross-motion for summary judgment [#24].  Upon consideration of the motions, the oppositions thereto, and the record of this case, the Court concludes that Kahn's motion must be denied, and FMCSA's motion must be granted.

---

[1] During summary judgment briefing, Kahn informed the Court that he requested five more self-insurance decisions:  *LS Transp., Inc.*, FMCSA Docket MC-221057 (Jan. 23, 2008); *Averitt Express, Inc.*, FMCSA Docket MC-121600 (Apr. 15, 2008); *Swift Transp. Co., Inc.*, FMCSA Docket MC-136818 (May 29, 2008); *Knight Transp. Co., Inc.*, FMCSA Docket MC-227271 (Sept. 3, 2008); *Swift Transp. Co., Inc.*, FMCSA Docket MC-136818 (Sept. 29, 2008).  Kahn's complaint, however, makes no mention of these decisions.  Therefore, they are not before the Court.

## I. BACKGROUND

To qualify for federal registration, commercial motor carriers must maintain liability insurance in prescribed amounts. 49 U.S.C. § 13906(a)(1). This security must be sufficient to pay for bodily injury resulting from the negligent operation, maintenance, or use of commercial motor vehicles and for property damage or loss ("BI & PD"). *Id*. As an alternative to acquiring insurance, commercial motor carriers may qualify as "self-insurer[s]" by showing that they have sufficient financial resources to satisfy certain specified security requirements. *Id*. at § 13906(d); 49 C.F.R. § 387.309. Specifically:

> The FMCSA will consider and will approve, subject to appropriate and reasonable conditions, the application of a motor carrier to qualify as a self-insurer, if the carrier furnishes a true and accurate statement of its financial condition and other evidence that establishes to the satisfaction of the FMCSA the ability of the motor carrier to satisfy its obligation for bodily injury liability, property damage liability, or cargo liability. . . . [A]pplicants for authority to self-insure against bodily injury and property damage claims should submit evidence that will allow the FMCSA to determine:
>
> (1) The adequacy of the tangible net worth of the motor carrier in relation to the size of operations and the extent of its request for self-insurance authority.
> (2) The existence of a sound self-insurance program.
> (3) The existence of an adequate safety program.
> (4) Additional information . . . as the FMCSA may require.

49 C.F.R. § 387.309. The FMCSA has administered the self-insurance program since 2000. Until then, the Federal Highway Administration ("FHWA") had administered the program. Before the FHWA, the Interstate Commerce Commission ("ICC") administered the program.

The FMCSA prepares written decisions on applications for self-insurance authorization and publishes notices of these decisions in the FMCSA Register. Whereas the written decisions explain the rationale for FMCSA action, the notices merely state what final action the FMCSA

took with respect to a given self-insurance application. The practice of the ICC and the FHWA, and for a time the FMCSA, was to provide the full written self-insurance decisions to the public upon request. In October 2007, the FMCSA reversed course and discontinued the practice of providing full written self-insurance decisions to the public. According to the FMCSA, this practice change was motivated by a concern that the financial information contained in full decisions might expose commercial motor carriers to competitive harm. Therefore, the FMCSA began treating such financial information as confidential and propriety and referring public requests for self-insurance decisions to the FMCSA FOIA office.

The genesis of the instant action is the issuance of three self-insurance decisions: *P.A.M.*, *Celadon,* and *Con-Way*. Between October 2007 and January 2008, the FMCSA published notices for each of these decisions. Below the listing of each decision was printed: "Copies of Decisions May Be Purchased by Calling DC News and Data, Inc." Kahn, an attorney who practices before the FMCSA (and who practiced before its predecessor agencies), alleges that he called DC News and Data, Inc., but its telephone number had been disconnected. Thereafter, Kahn sent three separate letters to the FMCSA requesting these decisions. The FMCSA acknowledged receiving these letters but did not immediately provide the decisions. Kahn filed the original complaint in this action in December 2007, after the FMCSA did not provide him with a copy of the *P.A.M.* decision immediately upon his request. Kahn filed an amended complaint in January 2008, after the FMCSA did not provide him with copies of the *Celadon* and *Con-Way* decisions immediately upon his request.

Since Kahn filed his complaints, the FMCSA has provided him with all three of the requested decisions: the *Con-Way* decision was provided in unredacted form in March 2008; and

the *Celadon* and *P.A.M.* decisions were provided in redacted form in May 2008.  The FMCSA determined that the Con-Way decision did not contain confidential commercial information and therefore provided it without redaction.  The FMCSA believed that the *Celadon* and *P.A.M.* decisions did contain confidential commercial information.  Therefore, the FMCSA notified Celadon and P.A.M. that Kahn had requested copies of their decisions and allowed them an opportunity "to submit any written objections to release" of their decisions.  49 C.F.R. § 7.17(a).  Celadon and P.A.M. submitted objections.  The FMCSA adopted Celadon's objections, redacted the *Celadon* decision accordingly, and released the *Celadon* decision to Kahn.[2]  The FMCSA determined that P.A.M.'s objections were too broad, adopted narrower redactions, and released the *P.A.M.* decision to Kahn.[3]  Notwithstanding the FMCSA's disclosure of these decisions, Kahn persists in this suit.  Indeed, Kahn has filed a motion for summary judgment, and the FMCSA has filed a cross motion for summary judgment.  The Court now turns to these motions.

---

[2] The FMCSA redacted the following information from the *Celadon* self-insurance decision: the dollar amount of Celadon's self-insured bodily injury and property damage claims for the quarter ending March 2007; the percentage of Celadon's revenue during the same quarter that was represented by these claims; the percentage of Celadon's net worth during the same quarter that was represented by these claims; and (4) the percentage of these claims that were covered by Celadon's existing collateral during the same quarter.

[3] The FMCSA redacted the following information from the *P.A.M.* self-insurance decision: operating income; net income; EBITDA, cash flow available for insurance and claims; cash and short-term investments; working capital; current ratio; tangible net worth; total liabilities; percentage increases or decreases in the aforementioned financial statistics in 2005-06; annual savings from self-insurance; BI & PD insurance deductible; outstanding BI & PD claims; BI & PD claims statistics; cargo claim statistics; percentage of revenue from a major customer; percentage of revenue generated by transportation services provided to the automotive industry; and a business decision that affected liquidity and days payable outstanding.

## II.  ANALYSIS

Kahn contends he is entitled to the *Celadon* and *P.A.M.* decisions in unredacted form under FOIA, 5 U.S.C. § 552(a)(2)(A), which provides: "[e]ach agency, in accordance with published rules, shall make available for public inspection and copying -- final opinions, including concurring and dissenting opinions, as well as orders, made in the adjudication of cases[.]"  FMCSA contends FOIA does not require it to provide the *Celadon* and *P.A.M.* decisions in unredacted form because the decisions contain confidential commercial information and thus fall within FOIA Exemption 4, 5 U.S.C. § 552(b)(4), which provides:  "[t]his section does not apply to matters that are -- (4) . . . commercial or financial information obtained from a person and privileged or confidential[.]"  The Court agrees with FMCSA and therefore grants its motion for summary judgment.

In a FOIA suit, an agency is entitled to summary judgment once it bears its burden of demonstrating that no material facts are in dispute and that all information that falls within the requests at issue either has been produced, is unidentifiable, or is exempt from disclosure. *Students Against Genocide v. Dep't of State*, 257 F.3d 828, 833 (D.C. Cir. 2001).  A court may award summary judgment to a FOIA defendant solely on the basis of information provided by the agency in sworn statements so long as the agency provides reasonably specific details that justify the nondisclosures and demonstrate that the information withheld logically falls within the claimed exemption unless record evidence or agency bad faith contradicts such statements. *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).  To successfully challenge such a showing, a plaintiff must do more than establish some "metaphysical doubt"; rather, the

plaintiff must come forward with "specific facts" demonstrating that a genuine trial issue remains. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

      For FMCSA to prevail on its motion for summary judgment under Exemption 4, FMCSA must show that the information redacted from the *Celadon* and *P.A.M.* decisions is "(a) commercial or financial, (b) obtained from a person, and (c) privileged or confidential." *National Parks and Conservation Ass'n v. Morton*, 498 F. 2d 765, 766 (D.C. Cir. 1974) ("*National Parks I*"). Because there can be no dispute that persons, namely Celadon and P.A.M., submitted the redacted information, *see Judicial Watch, Inc. v. Export-Import Bank*, 108 F. Supp. 2d 19, 28 (D.D.C. 2000) (observing that the term "'person' in the context of Exemption 4 applies to a wide range of entities, including corporations, associations and public or private organizations"), the Court need only address whether the redacted information is commercial or financial and whether the redacted information is privileged or confidential.

      The D.C. Circuit has stated that although "not every bit of information submitted to the government by a commercial entity qualifies for protection under Exemption 4 . . . the terms 'commercial' and 'financial' should be given their ordinary meanings." *Public Citizen Health Research Group v. FDA*, 704. F.2d 1280, 1290 (D.C. Cir. 1983) ("*PCHRG*") (citing *Washington Post Co. v. U.S. Dep't of Health & Human Servs.*, 690 F.2d 252, 266 (D.C. Cir. 1982); *Board of Trade v. Commodity Futures Trading Comm'n*, 627 F.2d 392, 403 (D.C. Cir. 1980)). Thus, the question of whether information is "commercial" boils down to a common sense inquiry into whether the proponent has a business interest in that information. *PCHRG*, 704 F.2d at 1290. Similarly, the question of whether information is "financial" is simply the question of whether that information pertains to money, investments, and the like. *Cf. id*.

The Court easily concludes that the information redacted from the *Celadon* and *P.A.M.* decisions — *e.g.*, revenue, net worth, income, and EBITDA — is financial and commercial in nature because it all concerns the business interests and/or finances of Celadon and P.A.M. Kahn does not even contend that the redacted information is neither financial nor commercial. Indeed, Kahn refers to the redacted information as "financial" in numerous places in his briefs. (*See e.g.*, Pl.'s Opp. to Def.'s Mot. for Summ. Judg. at 7.) Therefore, the Court concludes that the redacted information is commercial and financial in nature and proceeds to the final prong of the Exemption 4 inquiry.

The final prong of the Exemption 4 inquiry asks whether the redacted information is privileged or confidential. The parties largely ignore the notion of privilege, instead focusing their arguments on whether the redacted information is confidential. The court follows suit. FOIA "contains no definition of the word 'confidential.'" *National Parks I*, 498 F.2d at 766. Following a thorough examination of the legislative history of Exemption 4, the D.C. Circuit adopted the following definition:

> [C]ommercial or financial matter is 'confidential' for purposes of the exemption if disclosure of the information is likely to have either of the following effects: (1) to impair the Government's ability to obtain necessary information in the future; or (2) to cause substantial harm to the competitive position of the person from whom the information was obtained.

*National Parks I*, 498 F.2d at 770. Because commercial motor carriers wishing to qualify for self-insurance must submit the type of commercial and financial information at issue, the Court finds it unlikely that upholding the redactions will impair the government's ability to obtain such information in the future. Accordingly, the Court need only address the second definition: whether disclosure may cause substantial harm to the competitive position of *Celadon* or *P.A.M.*

To make an adequate showing of the likelihood of substantial competitive harm, there need not be "actual competitive harm; evidence revealing '[a]ctual competition and the likelihood of substantial competitive injury' is sufficient to bring commercial information within the realm of confidentiality." *PCHRG*, 704 F.2d at 1291 (quoting *Gulf & Western Indus. v. U.S.*, 615 F.2d 527, 530 (D.C. Cir. 1979)). Although "the court need not conduct a sophisticated economic analysis of the likely effects of disclosure, . . . [c]onclusory and generalized allegations of substantial competitive harm . . . cannot support an agency's decision to withhold requested documents." *PCHRG*, 704 F.2d at 1291 (citing *National Parks and Conservation Ass'n v. Kleppe*, 547 F.2d 673, 680-81 (D.C. Cir. 1976) ("*National Parks II*"); *Pacific Architects & Engineers, Inc. v. Renegotiation Board*, 505 F.2d 383, 384-85 (D.C. Cir. 1974)).

The FMCSA contends that the disclosure of the redacted information could cause competitive harm to Celadon and P.A.M. In support of that contention, the FMCSA cites to correspondence with representatives of Celadon and P.A.M. (*See* Def.'s Mot. for Summ. Judg., Attach. 2, at ¶¶ 10, 15 ("Coleman Decl.").) Specifically, the Vice President and General Counsel of Celadon requested that the redacted information not be released because it "may give the requesting party some competitive benefit that it is not otherwise entitled to and this information is not presently public information." (Coleman Decl., Attach. 1, at 1.) Similarly, P.A.M.'s Risk Manager requested that the redacted information not be released, stating that it "had been carved out of [P.A.M.'s] consolidated financial statement," that it is "extremely proprietary in nature," and that "[i]t contains confidential financial information of which its disclosure is of no benefit other than to possible industry competitors." (Coleman Decl., Attach. 3, at 1.) Kahn responds that commercial motor carriers, like Celadon and P.A.M., understand that the self-insurance

process will result in the publication of some of their financial information. Kahn notes but fails to explain the relevance of regulations requiring carriers to file reports. *See* 49 C.F.R. 369. Finally, Kahn questions the FMCSA's assertion that carriers have requested that their financial or commercial information be kept confidential in connection with its submission.

The Court agrees with the FMCSA that it properly withheld the redacted information as confidential. Although the FMCSA could have done more to explain how the disclosure of the redacted information could harm the competitive positions of Celadon and P.A.M., the Court finds applicable here the D.C. Circuit's conclusion that it is "virtually axiomatic" that the disclosure of such financial and commercial information is likely to cause competitive harm; thus, such information is exempt from disclosure under Exemption 4. *See National Parks II*, 547 F.2d at 684; *see also Judicial Watch Inc.*, 108 F. Supp. 2d at 28-29 (holding that the disclosure of similar financial information submitted in connection with an export insurance application could cause substantial competitive harm to the company from whom the information was obtained). Accordingly, the Court upholds the FMCSA's decision to release the *Celadon* and *P.A.M* decisions in redacted form.

Kahn raises several additional arguments both in his motion for summary judgment and in his opposition to the FMCSA's motion for summary judgment. First, Kahn argues that the FMCSA "had an obligation to live up to its word" and make the *Celadon* and *P.A.M.* decisions available, (Pl.'s Opp. to Def.'s Mot. for Summ. Judg. at 6), because the notices for the decisions stated that copies were available upon request. Beyond the fact that Kahn cites no law in support of this argument, its obvious failing is that the FMCSA did make copies available albeit in redacted form. Second, Kahn argues that the FMCSA released such orders in the past and should

not reverse course now.  Kahn cites no law in support of this argument.  The Court likewise finds none.  To the contrary, the Court notes that FMCSA past practice notwithstanding, the Court has no power "to require disclosure of materials that are exempt under FOIA."  *Maricopa Audubon Soc. v. U.S. Forest Serv.*, 108 F.3d 1082, 1087 (9th Cir. 1997).  Third, Kahn argues that the orders must be released in unredacted form because the agency relies on such orders as precedent.  Kahn again cites no law in support of this argument.  In any event, the Court finds no merit in it because the redaction of limited and specific financial information has little bearing on the FMCSA's or the public's ability to consider the precedential effect of prior decisions.  Finally, in several supplemental filings, Kahn argues that redacting the financial and commercial at issue runs contrary to President Obama's goal of increasing government transparency.  The Court is not persuaded that the Obama administration's policy pronouncement somehow alters the application of a federal statute.  Accordingly, the Court rejects all of Kahn's remaining arguments.

### III.  CONCLUSION

For the foregoing reasons, the Court concludes that Kahn's motion for summary judgment [#11] must be DENIED, and FMCSA's motion for summary judgment [#24] must be GRANTED.  An appropriate Order accompanies this Memorandum Opinion.

Henry H. Kennedy, Jr.
United States District Judge